**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NOON MEDITERRANEAN, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11814 (BLS) |

**DECLARATION OF STEFAN BOYD IN SUPPORT OF
<u>CHAPTER 11 PETITION AND INITIAL FILINGS</u>**

I, Stefan Boyd, declare:

1.  I am the Chief Executive Officer, President, Treasurer and Secretary of Noon Mediterranean, Inc. (f/k/a Verts Mediterranean Grill), the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>" or "<u>Noon</u>").  I am also a member of the Debtor's Board of Directors.  I initially became employed by the Debtor as its Vice President of Finance in March 2017.  I assumed additional responsibilities as the Debtor's Chief Marketing Officer in June 2018.  The Debtor's Board of Directors approved my appointment as Chief Executive Officer on August 1, 2018.  In my capacity as a board member and officer of the Debtor, I am familiar with the Debtor's business, day-to-day operations, and financial affairs.

2.  I received Bachelor of Arts (Applied Mathematics) and Bachelor of Business Administration (Finance) degrees from Walla Walla University in 2008 and a Master of Business Administration (Finance, General) degree from Carnegie Mellon University in 2015.  My

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number are:  Noon Mediterranean, Inc. (f/k/a Verts Mediterranean Grill, Inc.; f/k/a Verts Kebap, Inc.; f/k/a DMS Foods, Inc.) (-5849).  At the time it filed its bankruptcy petition, the Debtor's corporate headquarters was located at:  Workville – Noon Mediterranean, 1412 Broadway, 21st Floor, New York, NY  10018.

employment history includes work at JP Morgan as an Investment Banking Associate (Consumer & Retail Group) from July 2015 – February 2017

3.  On August 6, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 (the "Chapter 11 Case") of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended or modified, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"), and filed various motions described herein requesting certain relief (collectively, the "Initial Pleadings"). I submit this declaration (the "Declaration") in support of the Debtor's Chapter 11 Case and the Initial Pleadings.

4.  Except as otherwise indicated herein, all statements set forth in this Declaration are based upon (i) my personal knowledge as a Board member and officer of Noon, (ii) information supplied to me by other members of Noon's management or Noon's professionals, (iii) my review of relevant documents, and/or (iv) my experience with, and knowledge of, the Debtor's financial affairs and operations. If called upon to testify, I would testify to the facts set forth in this Declaration.

5.  This Declaration is divided into the following parts: Part I describes the Debtor's business; Part II describes the circumstances giving rise to the commencement of this Chapter 11 Case; Part III describes the Debtor's planned course for this Chapter 11 Case; and Part IV addresses the Initial Pleadings.

### PART I – THE DEBTOR'S BUSINESS

*Overview of Operations*

6.  Noon was incorporated in the State of Delaware on January 10, 2011. Noon maintains a place of business at 1412 Broadway, 21st Floor, New York, NY 10018.

7. Noon operates a fast casual restaurant chain. In May 2016, it was rated ninth in Restaurant Business Online's list of *Top 25 Fastest-Growing Fast Casuals*. As of November 2017, Noon had nineteen (19) restaurant locations in four states in the United States, in and around the following cities: Austin, Texas; Houston, Texas; Dallas, Texas; Boston, Massachusetts; Philadelphia, Pennsylvania; and New York, New York. Noon's World Wide Web site is located at https://www.eatnoon.com.

8. Noon (then Verts) was founded in 2011 by two University of Texas and WHU-Otto Beisheim School of Management alumni, Michael Heyne and Dominik Stein, to recreate popular food from Europe which was not available in America. In November 2017, Verts was rebranded as Noon Mediterranean; the name of the corporate entity was changed from VertsKebap, Inc. to Noon Mediterranean, Inc.

9. As of the Petition Date, Noon employs 235 employees, consisting of: 51 full-time hourly employees, 149 part-time hourly employees, and 35 salaried employees.

*Pre-Petition Capital Structure*

10. On March 30, 2015, Noon (then Verts), Deutsche Balaton AG ("Deutsche Balaton") and certain investors (the "2015 DB Investors") (specifically, Christine Jochim, Marco Stylish, Stephan Damm, Hansjörg Plaggemars, and Martin Flick) entered into a loan agreement (the "2015 DB Agreement") to (i) purchase 200,000 of newly-issued preferred shares for 818,557.27 euros ($947,075.17) and (ii) to lend 1,181,442.73 euros ($1,366,627.18) to Noon. Interest accrued at the annual rate of 10% at the end of each calendar year. Under the 2015 DB Agreement, the loan matured on March 31, 2018. At maturity, Noon was to pay back principal, accrued interest and equity at a total annual IRR of 25% by March 31, 2018.

11.     On March 28, 2018, Noon, Deutsche Balaton and the 2015 DB Investors entered into an amendment to the 2015 DB Agreement which replaced the obligations thereunder. Pursuant to the amendment, the parties executed two separate convertible notes. Accordingly, on March 28, 2018, Noon, Deutsche Balaton and certain investors (the "2018 DB Note A Investors") (specifically, Christine Jochim, Marco Stillich, Stephan Damm, Kathrin Plaggemars, and Martin Flick) executed a convertible promissory note (the "2018 DB Note A") under which Noon obligated itself to repay the prior loans totaling (€1,181,442.73), together with interest thereon at a rate of five percent (5%) per annum, accruing quarterly, calculated on an actual/actual basis and without compounding. Under the 2018 DB Note A, the loan matures twenty-four (24) months after a "LTM Break-Even Event," a term defined as follows:

> the date on which the profit and loss statement of the Company reflects net income of not less than $0.00 (U.S.) for the rolling twelve-month period ending on such date.

Messrs. Heyne and Stein guaranteed the obligations under the 2018 DB Note A, but recourse on the guarantees is limited to their capital stock (common and preferred shares) in the Company and to no other assets which either owns. As of the Petition Date, the repayment obligation under the 2018 DB Note A had not matured and, by extension, the accrued amount under the 2018 DB Note A was outstanding.

12.     Also on March 28, 2018, Noon, Deutsche Balaton and certain investors (the "2018 DB Note B Investors") (specifically, Christine Jochim, Marco Stillich, Stephan Damm, Kathrin Plaggemars, and Martin Flick) executed a convertible promissory note (the "2018 DB Note B") under which Noon obligated itself to repay €2,856,382.40 at a rate of nineteen percent (19%) per annum, accruing quarterly, calculated on an actual/actual basis and without compounding. Under

the 2018 DB Note B, the loan matures twenty-four (24) months after a "LTM Break-Even Event," a term defined as follows:

> the date on which the profit and loss statement of the Company reflects net income of not less than $0.00 (U.S.) for the rolling twelve-month period ending on such date.

Messrs. Heyne and Stein guaranteed the obligations under the 2018 DB Note B, but recourse on the guarantees is limited to their capital stock (common and preferred shares) in the Company and to no other assets which either owns. As of the Petition Date, the repayment obligation under the 2018 DB Note B had not matured and, by extension, the accrued amount under the 2018 DB Note B was outstanding.

13. On May 28, 2015, Noon (then Verts) and VertsKebap Finance GmBH ("Noon Finance GmBH") entered into an unsecured, subordinated loan agreement (the "Noon Finance GmbH Agreement") under which Noon borrowed from Noon Finance GmBH in accordance with a schedule appended to the Noon Finance GmBH Agreement. To summarize, under the Noon Finance GmBH Agreement, Noon borrowed approximately $5 million from Noon Finance GmBH in installments over a period of months, with interest payable on the loans at either 8% or 10% annually, together with a management fee of 0.25% being added to each interest payment. By amendment to the Noon Finance GmBH Agreement dated December 27, 2016, the management fee was increased to 0.60% effective January 1, 2017. The obligations under the Noon Finance GmbH Agreement are subordinated to the obligations under the 2018 DB Note A, the 2018 DB Note B, the GbR Investor Treaty (defined below), and trade debt. As of the Petition Date, approximately $8,700,000.00 was due and owing under the Noon Finance GmBH Agreement.

14. On January 1, 2016, Noon (then Verts) and VertsKebap Finance LLC ("Noon Finance LLC") entered into an unsecured, subordinated loan agreement (the "Noon Finance LLC

Agreement") under which Noon borrowed from Noon Finance LLC in accordance with a schedule appended to the Noon Finance LLC Agreement.  To summarize, under the Noon Finance LLC Agreement, Noon borrowed approximately $2 million from Noon Finance LLC in installments over a period of months, with interest payable on the loans at either 8% or 10% annually, together with a management fee of 0.25% being added to each interest payment.  By amendment to the Noon Finance LLC Agreement dated December 27, 2016, the management fee was increased to 0.60% effective January 1, 2017.  The obligations under the Noon Finance LLC Agreement are subordinated to the obligations under the 2018 DB Note A, the 2018 DB Note B, the GbR Investor Treaty (defined below), and trade debt.  As of the Petition Date, approximately $1,300,000.00 was due and owing under the Noon Finance LLC Agreement.

15.    On December 29, 2017, Noon, Michael Heyne, Dominik Stein and Noon Investment GbR[2] entered into an investment treaty (the "GbR Investment Treaty") pursuant to which the Debtor agreed to terms whereby the GbR agreed to lend €7 million in the form of convertible notes.  Under the GbR Investment Treaty, the convertible notes can be converted into preferred shares at any time at the price of $0.50 per share, and the GbR loans could be paid in advance, on notice.  Further, under the GbR Investment Treaty, interest was payable within four (4) weeks after Noon reached the last twelve months break-even (net income).  The convertible loans matured twenty-four (24) months after Noon reached the last twelve months break-even (net income).  Among other key terms, the GbR Investment Treaty also provided that existing loans of the GbR Investors outside of the GbR Investment Treaty could be adjusted as described therein.

---

[2] Under German law, a "GbR" (Gesellschaft bürgerlinchen Rechts, GbR) is defined as an association of individuals or enterprises united in the achievement of a joint contractual purpose.

16. As of the Petition Date, the repayment obligation under the GbR Investment Treaty had not matured and, by extension, the accrued amount under the GBR Investment Treaty was outstanding.

17. Finally, between October 2017 through April 2018, three German family offices (Meier, Beck and Eisenmann-Zippel) invested €7 million (approximately $8.4 million at the time) via more than ten (10) convertible loans with a $0.50/share conversion option.

**Trade Debt**

18. In addition to the above-referenced liabilities, as of the Petition Date, Noon had approximately $250,000 of trade debt.

**Equity**

19. As of the Petition Date, Noon had outstanding shares of preferred stock. Additionally, MHDS Holding GbR (an entity controlled by Michael Heyne and Dominik Stein) own the Debtor's outstanding shares of common stock subject to a 58.9% pledge to Noon Investment GbR.

## PART II – CIRCUMSTANCES LEADING TO BANKRUPTCY

20. The Debtor has continued to experience subpar financial performance and negative income from operations. During calendar year 2017, Noon generated gross revenue of $15,825,187.34 and net revenue of $15,060,574.47. During the first six (6) months of calendar year 2018, Noon generated gross revenue of $6,104,872.84 and net revenue of $5,781,263.59. The aforementioned figures are unaudited. The Debtor has closed underperforming restaurants and implemented cost reduction measures to help mitigate the effect of these circumstances and improve its financial position and liquidity. During March 2018, the Debtor closed one (1) location. Immediately prior to the Petition Date, the Debtor closed six (6) additional locations.

21. Additionally, while the Debtor's locations generate positive revenue before occupancy, high occupancy costs and high overhead contributed to losses. The Debtor has since laid off ten (10) employees in the corporate office and seventy-nine (79) hourly employees from the closure of stores.

## PART III – PLANNED COURSE FOR BANKRUPTCY

22. The Debtor's anticipated path through bankruptcy has two components. On the operational side, the Debtor seeks to rationalize its restaurant location "footprint" by rejecting leases associated with underperforming locations. The Debtor will move for approval of *de minimis* asset sale procedures/apply to employ an auctioneer to sell excess equipment, furniture and other personal property which it no longer needs.

23. On the balance sheet side, the Debtor intends to use the streamlined footprint to pursue a strategic transaction (whether via further investment, financing, or other means) which maximizes the value of the Debtor's assets for the benefit of its stakeholders. To that end, the Debtor proposes to retain Griffin Financial Group LLC ("Griffin") as its investment banker to assist with evaluating available options.

## PART IV – INITIAL FILINGS

24. The Debtor intends to file a series of applications and motions on either shortened or full notice in an effort to quickly advance its case. Those applications and motions will include the following:

   a. *Wages Motion* – the Debtor needs to pay its employees the "stub" part of their pre-petition wage claim in order to continue operating without substantial disruption of operations. Accordingly, the Debtor will be seeking limited authority to pay the pre-petition claims of its employees.

b. *Critical Vendor Motion* – the Debtor, a restaurant operator, needs certain things in order to operate its retail business on a daily basis. Accordingly, the Debtor will be seeking limited authority to pay the pre-petition claims of one/more critical vendors.

c. *Lease Rejection Motion* – the Debtor will be seeking to (i) confirm the termination of certain leases prior to the Petition Date and/or (ii) reject certain leases effective as of the Petition Date to rid itself of underperforming locations and to reduce the administrative burden upon its estate.

d. *Application to Employ and Retain Ciardi Ciardi & Astin as General Bankruptcy Counsel, Nunc Pro Tunc to the Petition Date.*

e. *Application to Employ and Retain Griffin Financial Group LLC as Investment Banker, Nunc Pro Tunc to the Petition Date, and Request for Limited Waiver of the Information-Keeping Requirements of Local Rule 2016-2.*

f. De Minimis *Asset Sale/Auctioneer Employment Motion* – described above.

g. *DIP Financing Motion* – the Debtor will be seeking approval of post-petition financing from two (2) existing investors in the amount of $110,000 with a 3.5% interest rate, payable on the later of (i) one hundred twenty days after the Petition Date or (ii) the effective date of a confirmed plan in the case. The proposed financing will be unsecured and have administrative-level priority.

I declare that the foregoing is true and correct to the best of my knowledge, information and belief under penalty of perjury.

Date: August 7, 2018
      New York, New York

*/s/ Stefan Boyd*
Stefan Boyd
Chief Executive Officer, President,
  Treasurer and Secretary