**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NOON MEDITERRANEAN, INC.,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 18-11814 (BLS) |

**APPLICATION OF NOON MEDITERRANEAN, DEBTOR AND DEBTOR IN POSSESSION, PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a), FOR AUTHORITY TO EMPLOY AND RETAIN GRIFFIN FINANCIAL GROUP, LLC AS INVESTMENT BANKER, *NUNC PRO TUNC* TO AUGUST 6, 2018 AND REQUEST FOR LIMITED WAIVER OF THE INFORMATION-KEEPING REQUIREMENTS OF LOCAL RULE 2016-2**

Noon Mediterranean, debtor and debtor in possession (the "Debtor" or the "Company"), respectfully submits this application (the "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authority to employ and retain Griffin Financial Group, LLC ("Griffin") as its investment banker, *nunc pro tunc* to August 6, 2018, and request for a limited waiver of the information-keeping requirements of Local Rule 2016-2.  In support of the Application, the Debtor respectfully represents that:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.     This Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1]     The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number are: Noon Mediterranean, Inc. (f/k/a Verts Mediterranean Grill, Inc.; f/k/a Verts Kebap, Inc.; f/k/a DMS Foods, Inc.) (-5849).  At the time it filed its bankruptcy petition, the Debtor's corporate headquarters was located at:  Workville – Noon Mediterranean, 1412 Broadway, 21st Floor, New York, NY  10018.

3.      Venue of this proceeding and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicates for the relief sought herein are sections 327 and 328 of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2016-2.

## INTRODUCTION

5.      On August 6, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

6.      The Debtor has determined, subject to the Court's approval, to retain Griffin as its investment banker in connection with its administration of this chapter 11 case.

## APPLICATION TO EMPLOY AND RETAIN GRIFFIN

7.      The Debtor seeks an order, pursuant to sections 327 and 328 of the Bankruptcy Code, approving the employment and retention of Griffin as its investment banker in connection with the Debtor's chapter 11 case, *nunc pro tunc* to August 6, 2018.

8.      Pursuant to section 327 of the Bankruptcy Code, a debtor in possession may employ a professional person to represent or assist it in carrying out its duties only if that person is "disinterested" as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the estate.

9.      Section 328(a) of the Bankruptcy Code empowers a debtor in possession to employ, subject to court approval, a professional person to perform services under any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.

10.     Griffin has advised the Debtor that neither Griffin, nor any member or employee of Griffin (a) holds an adverse interest in connection with the Debtor's case; or (b) represents any other entity having an adverse interest in connection with the Debtor's case, except as disclosed in the declaration of Thomas G. Whalen (the "Declaration"), which is attached hereto as **Exhibit 1**.

11.     The Debtor has selected Griffin because it is highly experienced in advising companies in understanding their strategic alternatives, raising capital, and buying or selling businesses or assets.  Griffin is thoroughly competent to act as the Debtor's investment banker in the administration of the estate.  In addition, the Debtor believes that Griffin has no disqualifying conflict of interest.  Griffin has advised the Debtor that Griffin and/or its members and employees may have previously been engaged by, may currently be engaged by, and may in the future be engaged by, in matters totally unrelated to the Debtor's pending chapter 11 case, entities that are claimants of the Debtor or other parties-in-interest in the chapter 11 case.  Griffin has not and will not represent any such entities in relation to the Debtor or the chapter 11 case.

12.     The services Griffin may be required to render for the Debtor include, without limitation, the following:

a.      Assist the Debtor in compiling summary information and preparing a summary information memorandum;

b.      Assist the Debtor in developing a targeted list of suitable potential capital providers/buyers who will be contacted on a discreet and confidential basis after approval by the Debtor;

c.      Assist the Debtor in providing a "teaser letter" to be sent to potential capital providers/buyers to generate interest in either the Financing Transaction or the Sale Transaction (as those capitalized terms are defined in the engagement agreement attached as **Exhibit 2** (the "Engagement Letter"));

d.      Coordinate the Debtor's preparation, review, execution, and processing of confidentiality agreements with potential capital providers/buyers wishing to review the information memorandum;

e.      Assist the Debtor in coordinating due diligence site visits for interested capital providers/buyers, if any, and work with the management team to prepare for any such visits with management;

f.      Assist the Debtor in the solicitation of competitive offers from potential capital providers/buyers;

g.      Assist the Debtor in negotiating any Financing Transaction or Sale Transaction on behalf of the Debtor;

h.      Assist the Debtor in developing and reviewing possible Financing Transaction and Sale Transaction structures, including the financial impact of using different pricing and forms of consideration;

i.      Assist the Debtor with preparing various financial analyses to assist during any and all negotiations; and

j.      Assist the Company, its accountants and attorneys in negotiating and closing a Financing Transaction or Sale Transaction.

12.      The Debtor intends to work closely with Griffin and any other retained professionals that may become involved in this case to ensure that there is no unnecessary duplication of services performed or charged to the Debtor's estate.

13.      The Debtor requests that Griffin be compensated via two components:  first, a Monthly Fee of $10,000 per month, payable on the terms described in the Engagement Agreement; and second, a Transaction Fee equal to the greater of (a) $300,000, or (b) 6.0% of the total amount of capital advanced to the Company in a Financing Transaction, or (c) 6.0% of Total Consideration (as such term is hereafter defined) in a Sale Transaction, payable on the terms described in the Engagement Agreement.  The Debtor also proposes to pay Griffin's reasonable out-of-pocket expenses incurred in providing the above services (including, but not limited to, travel, meeting, telephone, copy services, legal, postage and shipping, and database expenses, etc.).  Per the Engagement Agreement, Griffin has agreed that its monthly expenses will not exceed $500 without prior written approval of the Debtor.

14.      The key compensation terms are defined in the Engagement Agreement as follows:

6

a.  Financing Transaction:  The term "Financing Transaction" shall mean any transaction or series or combination of transactions, other than in the ordinary course of trade or business, whereby, directly or indirectly, the Company raises financing through the private placement of equity or other financing.

b.  Sale Transaction:  The "Sale Transaction" shall mean any transaction or series or combination of transactions, other than in the ordinary course of trade or business, whereby, directly or indirectly, control of or a material interest in the Company's business or any of its wholly-owned subsidiaries and/or affiliates or any of their respective assets, is transferred or acquired for consideration, including, without limitation, a sale or exchange of capital stock or assets, a merger or consolidation, a tender or exchange offer, a leveraged buy-out, minority investment or any similar transaction.

c.  Total Consideration:  "Total Consideration" shall mean the following financial consideration or value received by the Company and its shareholder(s) as a result of the Transaction:

(i)  payments of cash or stock (including any existing shareholder equity retained in the Company post-closing);

(ii)  debt obligations (at par value) issued to the Company and/or Shareholders;

(iii)  funded debt obligations (including capitalized leases) and other indebtedness for borrowed money of the Company and/or Shareholder(s) assumed by the buyer (either directly or through acquisition of stock) or paid by the buyer prior to or at closing;

(iv)  any cash and/ or the net recoverable value of other operating assets retained and not sold or transferred to the acquiror, such as accounts receivable, inventory, and property, plant and equipment;

(v)  the realized amount of incentive or "earnout" payments accruing to the Company or any shareholder(s) of the Company based upon the future performance of the business being sold, if and when received; and,

(vi)  consulting or similar payments not related to employment or substantial duties and payments received in connection with an agreement not to compete.

15.    Additionally, the Debtor has agreed to certain indemnification, contribution, limitation of liability and dispute resolution terms described in Exhibit A to the Engagement Letter, subject to the language contained in the proposed order attached hereto.

16.    The Debtor is seeking approval of the terms of Griffin's employment, including those terms described in the preceding paragraphs of this Application, pursuant to Code section 328(a).

7

17.     Prior to the filing of the above-captioned case, on August 3, 2018 the Debtor paid Griffin $10,000, the Monthly Fee for the month of August 2018.

### WAIVER OF CERTAIN INFORMATION-KEEPING REQUIREMENTS

18.     Due to the nature of Griffin's engagement, the Debtor believes that relief for Griffin from certain information-keeping requirements imposed by the Local Rules of this Court is necessary and appropriate.  In accordance with the terms of its retention, Griffin will receive a flat Monthly Fee and, potentially, a Transaction Fee.  The Debtor respectfully requests that this Court allow Griffin to keep time records in a summary format (and in one-hour increments) in connection with the engagement.

### NOTICE

19.     The Debtor has provided notice of this Application to the Office of the United States Trustee, the "top 20" creditors, and all parties that have filed a notice of appearance in the case.  The Debtor submits that no other or further notice is necessary or required.

### CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form of the order annexed hereto, authorizing the retention of Griffin as investment banker, *nunc pro tunc* to August 6, 2018, in connection with the Debtor's chapter 11 case and granting such other and further relief as is just or proper.

Dated:  August 9, 2018               Noon Mediterranean, Inc.
                                     Debtor and Debtor in Possession


                                     */s/ Stefan Boyd*

                                     BY:     Stefan Boyd

                                     ITS:    President, Chief Executive Officer,
                                                Treasurer  and Secretary

8