# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NOON MEDITERRANEAN, INC.,[1]<br><br>　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 18-11814 (BLS) |

**DECLARATION OF THOMAS G. WHALEN IN SUPPORT OF
APPLICATION OF NOON MEDITERRANEAN, INC., DEBTOR AND DEBTOR IN
POSSESSION, PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a)
AND BANKRUPTCY RULE 2014(a), FOR AUTHORITY TO EMPLOY
AND RETAIN GRIFFIN FINANCIAL GROUP, LLC AS INVESTMENT BANKER,
*NUNC PRO TUNC* TO AUGUST 6, 2018 AND REQUEST FOR LIMITED WAIVER OF
THE INFORMATION-KEEPING REQUIREMENTS OF LOCAL RULE 2016-2**

　　　I, Thomas G. Whalen, of full age, being duly sworn according to law, hereby declare as follows:

　　　1.　　I am a Senior Managing Director at Griffin Financial Group, LLC ("Griffin"), which maintains an office at 620 Freedom Business Center, Suite 210, P.O. Box 61926, King of Prussia, Pennsylvania 19406.

　　　2.　　I submit this declaration (the "Declaration") in connection with, and in support of, the *Application of Noon Mediterranean, Inc., Debtor and Debtor in Possession, Pursuant to 11 U.S.C. §§327(a) and 328(a) and Bankruptcy Rule 2014(a), for Authority to Employ and Retain Griffin Financial Group, LLC as Investment Banker,* Nunc Pro Tunc *to August 6, 2018 and*

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number are: Noon Mediterranean, Inc. (f/k/a Verts Mediterranean Grill, Inc.; f/k/a Verts Kebap, Inc.; f/k/a DMS Foods, Inc.) (-5849). At the time it filed its bankruptcy petition, the Debtor's corporate headquarters was located at: Workville – Noon Mediterranean, 1412 Broadway, 21st Floor, New York, NY 10018.

*Request for Limited Waiver of the Information-Keeping Requirements of Local Rule 2016-2* (the "Application").[4]

3. Unless otherwise stated in this declaration, I have personal knowledge of the facts hereinafter set forth. To the extent that any information disclosed herein requires amendment or modification upon Griffin's completion of further analysis or as additional creditor information becomes available to Griffin, a supplemental declaration will be submitted to the Court reflecting the same.

### Griffin's Disclosures

4. Insofar as I have been able to ascertain, and except as disclosed herein, neither I, nor Griffin, nor any member or employee of Griffin, has been engaged by any other party in interest in connection with this chapter 11 case. Further, except as described below, Griffin has no "connection" (as such term is used in Bankruptcy Code section 101(14) and Bankruptcy Rule 2014(a)) with the Debtor, its creditors, any other party in interest herein, the United States Trustee, or any person employed in the Office of the United States Trustee, nor does Ciardi hold any adverse interest or represent any entity having an adverse interest in connection with this case.

5. Griffin may have previously been engaged by, may currently be engaged by, and may in the future be engaged by, in matters totally unrelated to the Debtor's pending chapter 11 case, entities that are claimants of the Debtor or other parties-in-interest in the chapter 11 case. Griffin has not and will not represent any such entities in relation to the Debtor or the chapter 11 case.

6. Griffin and/or certain of its members and employees may currently represent, or may have previously represented, and may in the future represent, persons, entities and their

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

2

affiliates that are claimants, interest holders, other parties in interest, or professionals of the Debtor (and other professionals to be retained in this case) in matters totally unrelated to this case.

7. Except as set forth herein, neither I, nor Griffin, nor any member or employee thereof, insofar as I have been able to ascertain, holds or represents any entity having an adverse interest to the Debtor or its estate in the matters upon which Griffin is to be engaged in this case. In addition to the Debtor, Griffin reviewed the entities proposed to be listed on Schedule F, along with the list of equity security holders.

8. Griffin is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) in that Griffin, its members and employees:

    (a)    are not creditors, equity security holders, or insiders;

    (b)    are not and were not, within 2 years before the date of the filing of the petition, directors, officers, or employees of the Debtor; and

    (c)    do not have interests materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

9. By reason of the foregoing, I believe that Griffin is eligible for employment and retention pursuant to 11 U.S.C. §327 and the applicable Bankruptcy Rules.

**Griffin's Proposed Services, Compensation Structure and**
**Pre-Petition Payment History**

10. The services Griffin may be required to render for the Debtor include, without limitation, the following:

    a.    Assist the Debtor in compiling summary information and preparing a summary information memorandum;

    b.    Assist the Debtor in developing a targeted list of suitable potential capital providers/buyers who will be contacted on a discreet and confidential basis after approval by the Debtor;

    c.    Assist the Debtor in providing a "teaser letter" to be sent to potential capital providers/buyers to generate interest in either the Financing Transaction or the Sale Transaction (as those capitalized terms are defined in the engagement agreement attached as **Exhibit 2** (the "Engagement Letter"));

    d.    Coordinate the Debtor's preparation, review, execution, and processing of confidentiality agreements with potential capital providers/buyers wishing to review the information memorandum;

    e.    Assist the Debtor in coordinating due diligence site visits for interested capital providers/buyers, if any, and work with the management team to prepare for any such visits with management;

    f.    Assist the Debtor in the solicitation of competitive offers from potential capital providers/buyers;

    g.    Assist the Debtor in negotiating any Financing Transaction or Sale Transaction on behalf of the Debtor;

    h.    Assist the Debtor in developing and reviewing possible Financing Transaction and Sale Transaction structures, including the financial impact of using different pricing and forms of consideration;

    i.    Assist the Debtor with preparing various financial analyses to assist during any and all negotiations; and

    j.    Assist the Company, its accountants and attorneys in negotiating and closing a Financing Transaction or Sale Transaction.

11.    The Debtor has requested that Griffin be compensated via two components: first, a Monthly Fee of $10,000 per month, payable on the terms described in the Engagement Agreement; and second, a Transaction Fee equal to the greater of (a) $300,000, or (b) 6.0% of the total amount of capital advanced to the Company in a Financing Transaction, or (c) 6.0% of Total Consideration (as such term is hereafter defined) in a Sale Transaction, payable on the terms described in the Engagement Agreement. The Debtor also proposes to pay Griffin's reasonable out-of-pocket expenses incurred in providing the above services (including, but not limited to, travel, meeting, telephone, copy services, legal, postage and shipping, and database expenses, etc.). Per the Engagement Agreement, Griffin has agreed that its monthly expenses will not exceed $500 without prior written approval of the Debtor.

12. The key compensation terms are defined in the Engagement Agreement as follows:

a. Financing Transaction: The term "Financing Transaction" shall mean any transaction or series or combination of transactions, other than in the ordinary course of trade or business, whereby, directly or indirectly, the Company raises financing through the private placement of equity or other financing.

b. Sale Transaction: The "Sale Transaction" shall mean any transaction or series or combination of transactions, other than in the ordinary course of trade or business, whereby, directly or indirectly, control of or a material interest in the Company's business or any of its wholly-owned subsidiaries and/or affiliates or any of their respective assets, is transferred or acquired for consideration, including, without limitation, a sale or exchange of capital stock or assets, a merger or consolidation, a tender or exchange offer, a leveraged buy-out, minority investment or any similar transaction.

c. Total Consideration: "Total Consideration" shall mean the following financial consideration or value received by the Company and its shareholder(s) as a result of the Transaction:

   (i) payments of cash or stock (including any existing shareholder equity retained in the Company post-closing);
   (ii) debt obligations (at par value) issued to the Company and/or Shareholders;
   (iii) funded debt obligations (including capitalized leases) and other indebtedness for borrowed money of the Company and/or Shareholder(s) assumed by the buyer (either directly or through acquisition of stock) or paid by the buyer prior to or at closing;
   (iv) any cash and/ or the net recoverable value of other operating assets retained and not sold or transferred to the acquiror, such as accounts receivable, inventory, and property, plant and equipment;
   (v) the realized amount of incentive or "earnout" payments accruing to the Company or any shareholder(s) of the Company based upon the future performance of the business being sold, if and when received; and,
   (vi) consulting or similar payments not related to employment or substantial duties and payments received in connection with an agreement not to compete.

13. Additionally, the Debtor has agreed to certain indemnification, contribution, limitation of liability and dispute resolution terms described in Exhibit A to the Engagement Letter, subject to the language contained in the proposed order attached hereto.

14. Prior to the filing of the above-captioned case, on August 3, 2018 the Debtor paid Griffin $10,000, the Monthly Fee for the month of August 2018.

15. Griffin will make periodic applications to this Court for interim compensation in accordance with 11 U.S.C. §§330 and 331 and any orders of this Court governing such matters.

16. No promises have been received by Griffin or by any member or employee thereof as to payment or compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Griffin has no agreement with any other entity to share with such entity any compensation received by Griffin in connection with this case, other than with the members and employees of Griffin.

17. I will work closely with any other retained professionals that may become involved in this case to ensure that there is no unnecessary duplication of services performed or charged to the Debtor's estate.

18. The foregoing constitutes the statement of Griffin pursuant to 11 U.S.C. §327 and Bankruptcy Rule 2014(a).

I declare under penalty of perjury that the foregoing is true and correct.


Dated: August 8, 2018                    */s/ Thomas G. Whalen*
                                          Thomas G. Whalen