## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NOON MEDITERRANEAN, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11814 (BLS)<br><br>**Hearing Date:  August 21, 2018 at 11:00 A.M. ET** |

### MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR ORDER AUTHORIZING AND APPROVING DEBTOR'S POST-PETITION FINANCING ON AN INTERIM AND FINAL BASIS

Noon Mediterranean, debtor and debtor in possession (the "Debtor") in the above-captioned case, by and through its proposed counsel, hereby submits this motion (the "Motion") for an order authorizing and approving the Debtor's post-petition financing on an interim and final basis.  In support of this Motion, the Debtor respectfully represents as follows:

### SUMMARY

Pursuant to this Motion, the Debtor seeks approval of a debtor-in-possession financing agreement which provides for post-petition financing in the interim amount of $50,000 to fund the expenses listed in the Debtor's cash flow statement, with the ability to increase the DIP facility to $200,000 if other lenders are willing to participate on substantially-similar terms (the "DIP Facility").  The proposed debtor-in-possession lender, BWH5 GmbH&Co.KG, is an existing investor and/or affiliate of an existing investor of the Debtor.  The loan terms are simple and uncomplicated: 10% interest rate,[2] payable on the terms described in the Note attached as **Exhibit**

---

[1]     The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number are: Noon Mediterranean, Inc. (f/k/a Verts Mediterranean Grill, Inc.; f/k/a Verts Kebap, Inc.; f/k/a DMS Foods, Inc.) (-5849).  At the time it filed its bankruptcy petition, the Debtor's corporate headquarters was located at:  Workville – Noon Mediterranean, 1412 Broadway, 21st Floor, New York, NY  10018.

[2]     This rate varies from the rate stated (3.5%) in the *Boyd Declaration* (paragraph 3) as a result of further

**A** to this Motion (the "DIP Credit Agreement").  The proposed financing will be unsecured and have administrative-level priority.

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.     On August 6, 2018 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Declaration of Stefan Boyd (the "Boyd Declaration"), which is deemed fully incorporated herein by reference.

*Debtor's Need for Financing*

4.     The Debtor does not have sufficient funds available to maintain operations in the ordinary course of business for the anticipated duration of the above-captioned case.  Without access to the funds available under the DIP Facility proposed herein (defined below), the Debtor would be forced to cease operations at an imminent, future point. This would cause the Debtor's estate to suffer irreparable harm.  Absent an appropriate level of funding, the Debtor would be forced to close its remaining locations, and all of the efforts and expense by the Debtor to date in developing its fast casual restaurant concept would be wasted.  The DIP Facility is thus crucial to

---

negotiations with the entity providing the financing.

maximize the value of the Debtor's estate and distribution to creditors.  The DIP Facility will allow the Debtor to continue operating while it formulates a plan of reorganization.

5.    The Debtor negotiated the DIP Facility in good faith and at arm's length, and the Debtor believes the terms of the DIP Facility are fair and reasonable because, *inter alia,* they afford the Debtor sufficient liquidity to continue its operations while it proceeds with its reorganization, and because the terms of the DIP Credit Agreement (memorialized herein) are the best that the Debtor could obtain from any lender.  These negotiations culminated in an agreement with BWH5 GmbH&Co.KG, an existing investor and/or affiliate of an existing investor of the Debtor, to provide postpetition financing.  The loan terms are simple:  10% interest rate, payable on the terms described in the DIP Credit Agreement.  The proposed financing will be unsecured and have administrative-level priority.  Accordingly, subject to this Court's approval, the Debtor proposes to enter into the DIP Credit Agreement.  A copy of the Debtor's cash flow statement is attached as **Exhibit B**.

6.    Given that the financing is being provided on an unsecured basis with a below-market interest rate without a resulting administrative superpriority claim, the Debtor has concluded that the DIP Facility represents the best terms available to it.

*Summary of the Terms of the Proposed DIP Credit Agreement*

7.    The DIP Credit Agreement provides for a DIP Facility in the total amount of $50,000 to fund the expenses listed in the cash flow statement attached to this Motion as Exhibit B.  The DIP Lender is charging a 10% interest rate for amounts borrowed, payable on the earlier of (i) December 31, 2018; (ii) the Effective Date of a confirmed, chapter 11 plan proposed by the Debtor in the Bankruptcy Case; and (iii) termination of the lending relationship after three days have passed from the date of notice of an Event of Default.  The proposed financing will be unsecured and have administrative-level priority.  The default rate of interest is 15%.

## RELIEF REQUESTED

8.      Pursuant to this Motion, the Debtor requests authorization to obtain post-petition financing from the DIP Lender in accordance with the DIP Credit Agreement, with the ability to increase the DIP facility to $200,000 if other lenders are willing to participate on substantially-similar terms.

## BASIS FOR RELIEF REQUESTED

9.      The Debtor will be unable to continue operating without the financing provided by the DIP Credit Agreement.  The Debtor lacks the ability to pay expenses essential to operations.  Thus, the DIP Facility is necessary for the Debtor to operate in the ordinary course of business pending its reorganization.

10.      The Bankruptcy Code contemplates that a debtor may incur unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  *See* 11 U.S.C. §§ 364(b).  In this case, the Debtor simply will not be able to obtain post-petition financing on better terms than that offered by the DIP Lender, given that the DIP Lender is charging a below-market interest rate for the loan and there is no request for administrative superpriority status for the DIP Facility claim.

11.      Given that the DIP Facility is not proposed to be secured by the Debtor's assets, there are no disclosures required to be made pursuant to Federal Rule of Bankruptcy Procedure 4001(c) or Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  The Debtor notes that the DIP Lender is an existing investor and/or affiliate of an existing investor of the Debtor.

12.      The Debtor believes that the terms of the DIP Credit Agreement are fair and reasonable.  The financing provided under the DIP Credit Agreement is necessary to enable the

Debtor to continue operating.  The DIP Facility will further assure the continued support of the Debtor's creditors and postpetition administrative claimants.  The DIP Facility is the best financing the Debtor can hope to obtain, given the lending terms.

## NOTICE/CONCLUSION

13.    Notice of this Motion has been given to (a) the United States Trustee, (b) the Debtor's twenty largest unsecured creditors, and (c) the DIP Lender and its counsel.  Under the circumstances, the Debtor submits that no other or further notice is necessary.

WHEREFORE, the Debtor respectfully requests the entry of interim and final orders granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  August 20, 2018                    CIARDI CIARDI & ASTIN
        Wilmington, Delaware


                                           */s/ Joseph J. McMahon, Jr.*
                                           Daniel K. Astin (No. 4068)
                                           John D. McLaughlin, Jr. (No. 4123)
                                           Joseph J. McMahon, Jr. (No. 4819)
                                           1204 N. King Street
                                           Wilmington, Delaware 19801
                                           Tel:  (302) 658-1100
                                           Fax:  (302) 658-1300
                                           jmcmahon@ciardilaw.com

                                               -and-

                                           Albert A. Ciardi, III, Esquire
                                           One Commerce Square, Suite 1930
                                           2005 Market Street
                                           Philadelphia, PA 19103
                                           (215) 557-3550 telephone
                                           (215) 557-3551 facsimile
                                           aciardi@ciardilaw.com

                                           *Proposed Counsel for Debtor and
                                             Debtor in Possession*