# EXHIBIT A

**UNSECURED DEBTOR-IN-POSSESSION PROMISSORY NOTE**

**Original Principal Amount: U.S. $50,000**                                             **August 19, 2018**

      For value received, Noon Mediterranean, Inc., a Delaware corporation (the **"Borrower"**)**,** promises to pay to the order of BWH5 GmbH&Co.KG, Konrad-Zuse-Str. 3, 74172 Neckarsulm, GERMANY (the **"DIP Lender"**)**,** the amount of $50,000 (the **"Stated Principal Amount"**) together with interest and other amounts as provided herein.

      WHEREAS, on August 6, 2018 (the **"Petition Date"**)**,** the Borrower filed with the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**) a voluntary petition for relief (the **"Chapter 11 Case"**) under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**);

      WHEREAS, the Borrower has requested that the DIP Lender provide it with an unsecured term loan credit facility of $50,000 (the **"DIP Facility"**) to fund the day-to-day operating working capital needs and chapter 11 administrative costs of the Borrower during the pendency of the Chapter 11 Case, and the Lender is willing to extend such financing to the Borrower on the terms and subject to the conditions set forth herein; and

      NOW, THERFORE, the Borrower has made this Debtor-in-Possession Promissory Note (this **"DIP Note"**) in favor of the DIP Lender to evidence the DIP Facility and pursuant to the *Order Authorizing and Approving Debtor's Post-Petition Financing* [Docket No. TBD] (the **"DIP Order"**)**.** Capitalized terms not otherwise defined herein have the meanings given thereto in the DIP Order.

      1.      **Advances: Increase in Principal Amount.**

    (a)   Subject to the terms and conditions set forth in this DIP Note, the DIP Lender shall make an advance to the Borrower as follows (the **"Loan"**): On the date hereof, in the amount of $50,000.

    (b)   The DIP Lender shall not be obligated to make the Loan, or to take, fulfill, or perform any other action hereunder, unless the following conditions are satisfied as of the making of such Loan, in DIP Lender's reasonable discretion, or waived in writing by DIP Lender in its sole discretion:

        (i)    This DIP Note and any necessary or appropriate related documents shall have been executed and delivered to DIP Lender in form and substance acceptable to DIP Lender and shall be in full, force and effect.

        (ii)   The consummation of the transactions contemplated hereby or entered into in contemplation hereof shall not contravene, violate or conflict with, nor involve the DIP Lender in a violation of applicable law or regulation.

        (iii)  The applicable DIP Budget shall have been approved in writing by the

DIP Lender; for purposes of this DIP Note, the parties agree that electronic mail is a writing.

(iv)     All consents, authorizations and filings, if any, required in connection with the execution, delivery and performance by the Borrower, and the validity and enforceability against the Borrower, of the DIP Note, shall have been obtained or made, and such consents, authorizations and filings shall be in full force and effect.

(v)     The DIP Lender shall have received a copy of the applicable DIP Order, and such DIP Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the DIP Lender in its sole discretion, and shall be in full force and effect and shall not have been vacated, stayed, reversed, modified or amended.

(vi)     No event shall have occurred and be continuing, or would result from the Loan requested thereby, which, with the giving of notice or the passage of time or both, would constitute an Event of Default and no Event of Default shall be continuing.

(vii)     The aggregate principal amount of the Loan extended shall not exceed the Stated Principal Amount.

(viii)     All information, approvals, documents or other instruments as DIP Lender may reasonably request shall have been received by DIP Lender.

**2.     Interest; Payments.**

(a)     The Loans shall bear interest on the unpaid principal amount thereof plus all obligations owing to, and rights of, the Lender pursuant to the DIP Note, including (without limitation) all interest accruing thereon (collectively, the **"Obligations"**) from the date hereof (the **"Effective Date"**) to and including the Maturity Date (defined below), at a fixed rate per annum equal to ten percent (10%), calculated on the basis of a 360-day year for the actual number of days elapsed.

(b)     Accrued, unpaid interest on the Loans shall be compounded on the last day of each calendar month. After the Maturity Date and/or after the occurrence and during the continuance of an Event of Default (defined below), the Obligations shall bear interest at a rate equal to fifteen percent (15%) per annum, calculated on the basis of a 360-day year for the actual number of days elapsed (the **"Default Rate"**).

(c)     Interest shall be payable, in cash, upon prepayment of any portion of the Obligations, on the Maturity Date, and upon payment in full of the Loan; provided that the amount of Interest repaid on the Maturity Date shall in no event be less than $5,000.

(d)     Notwithstanding anything to the contrary set forth in this Section 2, if a court of competent jurisdiction determines in a final order that the rate of interest payable hereunder exceeds the highest rate of interest permissible under law (the **"Maximum Lawful Rate"**), then so long as the Maximum Lawful Rate would be so exceeded, the rate of interest payable hereunder shall be equal to the Maximum Lawful Rate.

(e)     The Obligations shall be due and payable on the earlier of (i) December 31, 2018; (ii) the Effective Date of a confirmed, chapter 11 plan proposed by the Debtor in the Bankruptcy Case; and (iii) termination of the lending relationship after three days have passed from the date of notice of an Event of Default (the **"Maturity Date"**)**.**

(f)     This Note may be prepaid in whole or in part at any time without penalty or premium. The DIP Lender may apply any such prepayments and any payments made hereunder in any order of priority determined by the DIP Lender in its exclusive judgment.

3.     **Covenants** Unless otherwise agreed to by the DIP Lender m writing, the Borrower covenants and agrees that it will:

(a)     Use the proceeds of the Loan solely for operating working capital purposes and chapter 11 administrative costs in the amounts and otherwise in accordance with and for the purposes provided for in the cash forecast attached hereto as <u>Exhibit A</u> (as modified from time to time with the consent of the DIP Lender in its sole discretion, the **"DIP Budget"**). Notwithstanding the then applicable DIP Budget, the Borrower may exceed the budgeted amount for any line item (other than professional fees) during any weekly budget period by 10% (the **"Permitted Variance"**) excluding any timing difference resulting from the roll-forward of budgeted expenses from previously weekly periods that were unpaid and which may rolled forward to subsequent periods; provided, that (i) the DIP Loan does not exceed the Stated Principal Amount and (ii) none of the proceeds of the DIP Loan shall be used by any party-in-interest to take any action or to otherwise assert any claims or causes of action against the DIP Lender in any capacity.

(b)     Keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its business and property and all legal requirements; and, upon the reasonable request of the DIP Lender, provide copies of, or access to, its books and records, and to discuss the business, operations, assets and financial and other condition of Borrower with officers and employees thereof and with their independent certified public accountants.

(c)     Promptly give written notice to the DIP Lender: (i) of the occurrence of any Default or Event of Default; (ii) of any (A) default or event of default under any instrument or other material agreement, guarantee or document of Borrower or (B) litigation, investigation or proceeding which may exist at any time between Borrower and any governmental authority; and (iii) of the commencement of any litigation or proceeding against Borrower for acts occurring after the Petition Date (A) in which more than $50,000 of the amount claimed is not covered by insurance or (B) in which injunctive or similar relief is sought.

(d)     Use the proceeds of the Loan solely for the purposes permitted by this DIP Note.

(e)     Promptly, from time to time, deliver such other information regarding the operations, business affairs and financial condition of the Borrower as the DIP Lender may request.

(f) If reasonably practicable, at least two (2) business days prior to the date when the Borrower intends to file any such pleading, motion or other document (and, if not reasonably practicable, as soon as reasonably practicable), provide copies of all material pleadings, motions, applications, judicial information, financial information and other documents to be filed by the Borrower in the Chapter 11 Case.

(g) Promptly execute and deliver such documents, instruments and agreements, and take or cause to be taken such acts and actions, as the Lender may reasonably request from time to time to carry out the intent of this DIP Note and the DIP Order.

(h) Not create, incur, assume or suffer to exist any indebtedness other than (i) indebtedness outstanding on the Effective Date; (ii) indebtedness in connection with the Loan; (iii) indebtedness in respect of fees and expenses owed to professionals retained by the Borrower or any official committee in the Chapter 11 Case up to the amounts set forth in the Budget.

(i) Not create, incur, assume or suffer to exist any lien upon any of its assets, whether now owned or hereafter acquired, except for liens that are permitted by order of the Bankruptcy Court.

(j) Not enter into any merger or consolidation or amalgamation or other change of control transaction or engage in any type of business other than of the same general type now conducted by it.

(k) Not convey, sell, lease, assign, transfer, or otherwise dispose of any assets or property (including, without limitation, tax benefits), other than the sale of inventory or the licensing of intellectual property in the ordinary course of business.

(l) Not make any advance, investment, acquisition, loan, extension of credit or capital contribution to, in or for the benefit of any person.

(m) Subject in all respects to the DIP Budget, not enter into any transaction, including, without limitation, any purchase, sale, lease or exchange of property or the rendering of any service, with any affiliate.

(n) Not incur or apply to the Bankruptcy Court for authority to incur, or suffer to exist, any indebtedness having the priority afforded by section 364(c) or (d) of the Bankruptcy Code (including any superpriority claims), unless the Obligations hereunder are to be irrevocably paid in full, in cash with the proceeds thereof.

(o) Not limit, affect or modify, or apply to the Bankruptcy Court to limit, affect or modify any of the rights of the DIP Lender with respect to the Obligations.

4. **Event of Default.**

(a) Each of the following events shall constitute an **"Event of Default"**:

(i) Borrower (A) fails to pay any payment (whether principal, interest, or

otherwise) when such amount becomes due and payable under this DIP Note or (B) Borrower defaults in the due performance or observance by it of any other term, covenant, or agreement contained in this DIP Note (and, if such default is capable of being remedied, it has not been remedied within the cure period set forth herein or, if no such cure period is provided, it has not been remedied to the reasonable satisfaction of the DIP Lender) two (2) business days following the occurrence of such event of default);

(ii) any representation, warranty, or statement made by or on behalf of Borrower herein or in any certificate delivered in connection herewith shall prove to be untrue in any material respect on the date on which made or deemed made;

(iii) this DIP Note is, or becomes, invalid or ineffective or unenforceable against Borrower, in whole or in part, or Borrower so asserts or at any time denies its liability or Obligations under this DIP Note;

(iv) prior to the Maturity Date, the Bankruptcy Court shall enter an order with respect to Borrower dismissing its Chapter 11 Case or converting it to a case under chapter 7 or any other chapter of the Bankruptcy Code, or appointing a trustee in its Chapter 11 Case or appointing a responsible officer or an examiner with enlarged powers relating to the operation of Borrower's business (beyond those set forth in sections 1106(a)(3) or (4)) under Bankruptcy Code section 1106(b), in each case, without the consent of the DIP Lender;

(v) prior to the Maturity Date, entry of any order of the Bankruptcy Court dismissing the Bankruptcy Case, unless as a condition thereto the Obligations are irrevocably paid in cash in full;

(vi) the Bankruptcy Court shall enter an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder of any lien on any assets of Borrower having an aggregate value in excess of $50,000;

(vii) the Borrower shall seek to, or shall support any other person's motion to, disallow in whole or in part the Obligations;

(viii) a DIP Order shall be entered in form and substance that is not acceptable to the DIP Lender in its sole discretion or, from and after the date of entry thereof, any DIP Order shall cease to be in full force and effect or shall have been vacated, stayed, reversed, modified or amended (or the Borrower shall take any step to accomplish any of the foregoing) without the consent of the DIP Lender;

(ix) prior to the Maturity Date, the Borrower shall make any payments on any indebtedness which arose before the Petition Date other than as provided in any of the "first day" orders entered in the Chapter 11 Case or otherwise consented to by the **DIP** Lender;

(x) one or more judgments or decrees shall be entered against Borrower involving in the aggregate a post-Petition Date liability (not paid or fully covered by

insurance or otherwise considered permitted Indebtedness) of $50,000 or more, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within the time required by the terms of such judgment;

(xi)    this DIP Note or any related document shall cease, for any reason, to be in full force and effect or the Borrower shall so assert in writing;

(xii)    an application or motion shall be filed by the Borrower for the approval of a superpriority Claim in the Bankruptcy Case or the Bankruptcy Court shall have granted superpriority status to any claim in the Bankruptcy Case, in each case, that is senior to the claims of DIP Lender against Borrower hereunder, without the prior written consent of the DIP Lender; or

(xiii)    the DIP Order shall not be entered by the Bankruptcy Court by September 30, 2018.

(b)    Upon the occurrence of an Event of Default and after three (3) days' notice to the Debtor, if any Event of Default shall then be continuing, DIP Lender may, in its sole discretion at any time during the continuance of such Event of Default, take any of the following actions:

(i)    declare all or any portion of the outstanding Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by Borrower;

(ii)    institute proceedings to enforce payment of such Obligations; and

(iii)    exercise any other remedies and take any other actions available to it at law, in equity, under this DIP Note, the Bankruptcy Code, other applicable law or pursuant to the DIP Order.

(c)    Except as otherwise expressly provided herein and in the DIP Order, the Borrower hereby waives presentment, demand, protest or any notice (to the maximum extent permitted by applicable law) of any kind in connection with this DIP Note.  Borrower shall also pay DIP Lender's costs of collection if any Obligations are not paid when due, including without limitation court costs, collection expenses, and reasonable out-of-pocket attorneys' fees and other expenses which DIP Lender may incur or pay in the prosecution or defense of its rights hereunder, whether in judicial proceedings, including bankruptcy court and appellate proceedings, or whether out of court.

5.    **Miscellaneous.**

(a)    Borrower hereby waives presentment, demand (except as expressly required herein), notice, protest and all other demands or notices in connection with the delivery, acceptance, performance, default or enforcement of this Note. No course of action or delay or omission of DIP Lender in exercising any right or remedy hereunder or under any other agreement or undertaking

securing or related hereto shall constitute or be deemed to be a waiver of any such right or remedy, and a waiver on the one occasion shall not operate as a bar to or waiver of any such right or remedy on any future occasion. The rights and remedies of DIP Lender as provided herein shall be cumulative and concurrent and may be pursued singularly, successively or together at the sole discretion of DIP Lender, and may be exercised as often as occasion therefor shall occur, and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same.

(b)     Borrower agrees to pay or reimburse the DIP Lender for all of its costs and expenses incurred in connection with the collection or enforcement of or preservation of any rights under this DIP Note, including, without limitation, the fees and disbursements of counsel for the DIP Lender, including attorneys' fees out of court, in trial, on appeal, in bankruptcy proceedings, or otherwise.

(c)     This Note shall be binding upon and inure to the benefit of Borrower and DIP Lender and their respective administrators, personal representatives, legal representatives, heirs, successors and assigns, except that Borrower shall not assign or transfer any of its rights and/or obligations hereunder, and any such assignment or transfer purported to be made by Borrower shall be null and void. DIP Lender may at any time transfer or assign (or grant a participation in) any or all of its rights and/or obligations hereunder without the consent of Borrower.

(d)     If any provision of this DIP Note is invalid, illegal, or unenforceable, the balance of this DIP Note shall remain in effect, and if any provision is inapplicable to any person or circumstance, it shall nevertheless remain applicable to all other persons and circumstances.

(e)     This DIP Note shall be governed by and construed in all respects under the laws of the State of Delaware, without reference to its conflict of laws rules or principles. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in the State of Delaware, in any action or proceeding arising out of or relating to this Note, agrees that all claims in respect of the action or proceeding may be heard and determined in any such court and agrees not to bring any action or proceeding arising out of or relating to this Note in any other court. Each of the parties waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety or other security that might be required of any other party with respect thereto. Each party agrees that service of summons and complaint or any other process that might be served in any action or proceeding may be made on such party by sending or delivering a copy of the process to the party to be served at the address of the party and in the manner provided for the giving of notices in Section 8(h). Each party agrees that a final, non-appealable judgment in any action or proceeding so brought shall be conclusive and may be enforced by suit on the judgment or in any other manner provided by law.

(f)     **THE DIP LENDER AND THE BORROWER HEREBY KNOWINGLY VOLUNTARILY, INTENTIONALLY WAIVE THE RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREIN, OR ARISING OUT OF UNDER OR IN CONNECTION WITH THIS DIP NOTE.**

(g) Borrower at its expense shall take any lawful actions and execute/deliver any documents which DIP Lender may in its discretion deem reasonably necessary or appropriate in order to further the purposes of this DIP Note.

(h) Notices under this DIP Note shall be addressed via electronic mail and first-class domestic/international mail as follows:

If to DIP Lender:

BWH5 GmbH&Co.KG
Konrad-Zuse-Str. 3
74172 Neckarsulm
GERMANY

with a copy to

Sarah E. Tallent, Esq.
REINHARDT LLP
200 Liberty Street, 27th Floor
New York, NY  10281
stallent@reinhardtllp.com

If to Borrower:

Noon Mediterranean, Inc.
Attn:  Stefan Boyd, Chief Executive Officer,
President, Treasurer and Secretary
Workville – Noon Mediterranean
1412 Broadway
21st Floor
New York, NY  10018
stefan.boyd@eatnoon.com

with a copy to

Albert A. Ciardi, III, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA 19103
aciardi@ciardilaw.com


Joseph J. McMahon, Jr.
CIARDI CIARDI & ASTIN
1204 N. King Street
Wilmington, Delaware 19801
jmcmahon@ciardilaw.com

**IN WITNESS WHEREOF,** Borrower and DIP Lender have executed this DIP Note as of the date first written above.

**BORROWER**

Noon Mediterranean, Inc.

By: _____

Stefan Boyd
Chief Executive Officer, President,
Treasurer and Secretary

**DIP LENDER**

BWH5 GmbH&CO.KG

By: _____

Name:

Title: