# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NOON MEDITERRANEAN, INC.,[1]<br><br>                        Debtor. | Chapter 11<br><br>Case No. 18-11814 (BLS)<br><br>**Related to D.I. 77** |

## NOTICE OF FILING EXECUTED COPY OF
## ASSET PURCHASE AGREEMENT

Noon Mediterranean, Inc., debtor and debtor in possession (the "Debtor"), by and through its counsel, hereby gives notice that attached as **Exhibit A** is the executed copy of the asset purchase agreement between the Debtor and Daphne's, Inc.

Dated: October 10, 2018  
       Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
jmcmahon@ciardilaw.com

-and-

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number are: Noon Mediterranean, Inc. (f/k/a Verts Mediterranean Grill, Inc.; f/k/a Verts Kebap, Inc.; f/k/a DMS Foods, Inc.) (-5849). At the time it filed its bankruptcy petition, the Debtor's corporate headquarters was located at: Workville – Noon Mediterranean, 1412 Broadway, 21st Floor, New York, NY 10018.

Albert A. Ciardi, III, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
(215) 557-3550 telephone
(215) 557-3551 facsimile
aciardi@ciardilaw.com

*Attorneys for the Debtor and
 Debtor in Possession*

# EXHIBIT A

<u>ASSET PURCHASE AGREEMENT</u>

This Agreement is made this ___ day of October 2018 (the "Effective Date"), by and between Noon Mediterranean, Inc. (the "Seller") and Daphne's, Inc. (hereinafter the "Buyer"). Buyer may assign its right to purchase to a nominee.

## RECITALS

**WHEREAS**, Noon Mediterranean, Inc. filed a voluntary petition under Chapter 11, Title 11, United States Code, as amended (the "Bankruptcy Code") on August 6, 2018 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case Number 18-11814 (the "Bankruptcy Case"); and

**WHEREAS**, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, free and clear of all liens, claims and encumbrances, the Acquired Assets (as hereinafter defined), in accordance with Sections 105(a), 363 and other applicable provisions of the Bankruptcy Code and pursuant to authorization to be granted by the Bankruptcy Court (the "Sale"), as provided in a sale order (the "Sale Order").

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual representations, warranties, covenants and promises contained herein, the adequacy and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1. Subject to the terms and conditions of this Agreement and the Sale Order, at the Closing (as defined herein) Buyer shall purchase and Seller shall sell all right, title and interest of the Seller in and to the Acquired Assets free and clear of all liens, encumbrances, claims, security interests and the like. "Acquired Assets" shall mean all of the assets, properties, goodwill, rights and claims of Seller excluding those identified as retained in Section 4, including, without limitation:

    (a) Leases for all 12 locations (the "Assigned Locations") to be assigned by Seller to the Buyer;

    (b) All restaurant furniture, fixtures and equipment ("FF&E") and inventory and restaurant supplies remaining in the Assigned Locations; and

    (c) All intellectual property including, but not limited to domain names, trademarks, recipes, artwork, website, and any other IP belonging or affiliated with Noon Mediterranean, Inc.

Provided all conditions contained in Section 6 hereof have been met, title to all of the Acquired Assets shall pass to Buyer upon the closing of the transaction (the "Closing"), which must occur on or before October 12, 2018 (the "Closing Date"), unless Buyer consents to an extension of time for Closing. Seller recognizes and acknowledges that the value of the Acquired Assets is subject to diminution. As such, time is of the essence to the Closing on the transactions

contemplated by this Agreement.

2. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPLICITLY PROVIDED IN THIS AGREEMENT, THE ACQUIRED ASSETS ARE BEING SOLD AND TRANSFERRED TO BUYER "AS IS, WHERE IS", AND SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATED TO THE ACQUIRED ASSETS. WITHOUT LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ACQUIRED ASSETS. BUYER FURTHER ACKNOWLEDGES THAT BUYER SHALL CONDUCT AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE ACQUIRED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS.

3. Seller shall be liable for all debts, liabilities and obligations relating to the Acquired Assets that arise before the Closing Date and Buyer shall be liable for all debts, liabilities and obligations relating to the Acquired Assets after the Closing Date. Buyer will not assume any debts, liabilities or obligations of Seller except as otherwise expressly and specifically described herein.

4. Seller retains all Bankruptcy Code Chapter 5 causes of action, all cash, cash equivalents, refunds, audit adjustments, bank accounts and causes of action.

5. Consideration for the purchase of the Acquired Assets shall be provided in four (4) separate categories: (1) $631,265.00 cash to pay creditors of Noon Mediterranean, Inc., which shall include expenses, fees and legal expenses, and which shall consist of a $631,265 payment to Seller on the Closing Date; (2) 2% of equity in Daphne's, Inc. in the form of common stock to bedistributed under a Plan; (3) payment of all rents due for the Assigned Locations for October 2018 in the amount of $115,000; and (4) subject to Buyer's prior written approval, up to $46,000.00 in post-bankruptcy payables to be paid as working capital over the thirty (30) day period following the Closing Date.

6. The asset purchase and sale contemplated by this Agreement is expressly subject to each of the following conditions:

    (a) The execution and delivery of a signed copy of this Agreement by Buyer and Seller.

    (b) Compliance with all terms and conditions contained herein and final approval by the Bankruptcy Court.

    (c) Entry of a final order approving the assumption and assignment of all twelve of the executory contracts for the Assigned Locations.

    (d) Delivery of all required documents set forth in Section 8.

    (e) No finders' fee, broker or other fee shall be payable by Buyer.

7. In the event that Seller cannot transfer all of the Acquired Assets, or the benefit of

all of the Acquired Assets on the Closing Date, for any reason, this Agreement shall terminate ab initio, upon written notice from Buyer to Seller. Buyer has the option, in its sole discretion, of agreeing to an extension of time to Close, said agreement to be conveyed to Seller in writing.

8. At Closing, Seller shall deliver to Buyer: (1) a Bill of Sale, (2) Assignments of the Contracts and Leases, and (3) a final, non-appealable Bankruptcy Court Order approving this Agreement.

9. Seller represents and warrants to Buyer as follows:

 (a) Subject to the entry of the Sale Order, Seller has full power and authority to enter into and perform this Agreement.

 (b) Subject to the entry of the Sale Order, the execution and performance of this Agreement by Seller will not (i) result in a material breach of, or constitute a material default under, any order, judgment, or decree or any agreement or other instrument to which Seller is a party or by which Seller or any of the Acquired Assets may be bound or (ii) constitute a violation of any law or regulation the enforcement of which would have a material adverse effect on Seller's ability to perform its obligations under this Agreement. The execution and performance of this Agreement by Seller have been duly authorized by all necessary actions of Seller and this Agreement constitutes the valid and binding obligation of Seller enforceable against it in accordance with its terms.

 (c) Except for the Bankruptcy Case and the claims asserted against Seller therein, there are no judicial or administrative actions, proceedings, or investigations pending or, to the knowledge of Seller, threatened that question the validity of this Agreement or any action taken or to be taken by Seller in connection with this Agreement that, if adversely determined, would have a material adverse effect on Seller's ability to perform its obligations under this Agreement. Seller is not a party to, and, to Seller's knowledge, is not threatened with, any legal action or other proceeding before any court or administrative agency against or by Seller or directly affecting or directly relating to its business or any of the Acquired Assets, that would reasonably be expected to have a material adverse effect on Seller's ability to perform its obligations under this Agreement.

 (d) Seller has, or will have upon entry of the Sale Order, the unrestricted power and right to sell, assign and deliver (subject to laws and regulations regarding the transfer of title in each jurisdiction where such property is located) marketable title to all Acquired Assets free and clear of all claims, liens, and encumbrances of whatever nature. Subject to the Sale Order, at the Closing, Buyer will obtain good and marketable title to the Acquired Assets free and clear of all claims, liens, and encumbrances of whatever nature. The property included in the Acquired Assets will be sold to the Buyer at the Closing in its "as is" "where is" condition. Subject

        to the Sale Order, each contract included in the Acquired Assets is transferable and assignable to Buyer pursuant to the transactions contemplated by this Agreement.

10. Buyer represents to Seller that:

    (a) Buyer is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Delaware. Buyer has full power and authority to enter into and perform this Agreement.

    (b) The execution and performance of this Agreement by Buyer will not (i) result in a material breach of, or constitute a material default under, any order, judgment, or decree or any agreement or other instrument to which Buyer is a party or by which Buyer may be bound or (ii) constitute a violation of any law or regulation the enforcement of which would have a material adverse effect on Buyer's ability to perform its obligations under this Agreement. The execution and performance of this Agreement by Buyer has been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the valid and binding obligation of Buyer enforceable against in accordance with its terms.

    (c) No consent, approval or authorization of, or designation, declaration, or filing with, any governmental authority is required on the part of the Buyer in connection with the execution, delivery, and performance under this Agreement.

    (d) There are no judicial or administrative actions, proceedings, or investigations pending or threatened that question the validity of this Agreement or any action taken or to be taken by Buyer in connection with this Agreement that, if adversely determined, would have a material adverse effect on Buyer's ability to perform its obligations under this Agreement.

11. Bankruptcy

    (a) Seller shall use its reasonable best efforts to obtain entry by the Bankruptcy Court of a Sale Order prior to Closing.

    (b) The Sale Order shall include provisions to (i) permit the sale of the Acquired Assets to Buyer free and clear of all liens, claims, and encumbrances pursuant to the terms of this Agreement and Section 363(b) of the Bankruptcy Code; (ii) include a finding of Buyer's good faith and provide for finality of the Sale Order under Section 363(m) of the Bankruptcy Code and applicable law and a waiver of the stays set forth in Bankruptcy Rules 6004(g) and 6006(d); (iii) provide that Buyer shall not be subject to (A) any successor liability and shall have no liability or suffer any damages for any liens, claims and encumbrances existing prior to the Closing Date which may be asserted against Seller, the Acquired Assets, or Seller's bankruptcy estate or (B) any claims as successor to the Acquired Assets; (iv) provide for the retention of jurisdiction by the Bankruptcy Court to resolve any and all disputes that may arise under or relate to this Agreement or the Sale Order, whether

>
> between Seller and Buyer or involving a person in interest in the Bankruptcy Case; and (v) contain findings of fact and conclusions of law which include the following: (A) the transactions under this Agreement were negotiated and entered into in good faith and at arms-length; (B) the marketing and sale process conducted by Seller are bona fide and adequate; (C) Seller gave due and proper notice and an opportunity to be heard to all interested parties, of this Agreement and the transaction; (D) Buyer is not holding itself out to the public as a continuation of Seller; (E) the consideration to be paid by Buyer under this Agreement constitutes reasonably equivalent value (as that term is defined in each of the Uniform Fraudulent Transfer Act and Section 548 of the Bankruptcy Code) and fair consideration for the Acquired Assets; (F) neither Buyer nor Seller is entering into the transactions contemplated by this Agreement fraudulently; (G) Seller has provided adequate assurances (as defined in Section 365 of the Bankruptcy Code) to all parties to the executory contracts which are to be assigned on the Closing Date; and (H) all defaults under the contracts which are to be assigned on the Closing Date are deemed cured.
>
> (c) Subject to the Sale Order, Seller and Buyer shall use reasonable best efforts to make any reasonable filings, take all reasonable actions, and to obtain any and all other approvals and orders necessary or appropriate for consummation of the transaction contemplated by this Agreement.
>
> (d) In the event an appeal is taken, or a stay pending appeal is requested or reconsideration is sought, from the Sale Order, Seller shall immediately notify Buyer of such appeal or stay request and shall provide to Buyer within one (1) business day a copy of the related notice of appeal or order of stay or application for reconsideration. Seller shall also provide Buyer with written notice (and copies) of, any other or further notice of appeal, motion or application filed in connection with any appeal from or application for reconsideration of, either of such orders and any related briefs.
>
> (e) Seller shall promptly notify Buyer in writing and, as is required by the Bankruptcy Code, all parties entitled to notice pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and orders of the Bankruptcy Court of all motions, notices and orders required to consummate the transactions contemplated by this Agreement, including the Sale Order, as modified by orders in respect of notice which may be issued at any time and from time to time by the Bankruptcy Court.

12. All notices required or permitted to be given by any party shall be in writing and shall be deemed to have been properly given if sent by registered or certified mail, or by recognized overnight courier service (the "Courier Service"), postage prepaid, to the parties at the addresses set forth below or to such other address as any party may from time to time give notice pursuant to this section. All notices shall be deemed received when delivered but in no event later than five (5)

business days after they are deposited with either the United States Postal Service or the Courier Service, whichever shall first occur. Notice shall be given at the following addresses:

>To Buyer:
>
>Daphne's, Inc.
>Michael Nakhleh, President
>[                              ]
>
>and
>
>Noon Mediterranean, Inc.
>Stefan Boyd, CEO
>[                              ]
>
>With a copy to:
>
>Albert A. Ciardi, III
>Ciardi Ciardi & Astin
>One Commerce Square
>2005 Market Street, Suite 3500
>Philadelphia, PA 19103
>
>James E. Till
>Bosley Till LLP
>120 Newport Center Drive
>Newport Beach, CA 92660

      12.    This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and undertakings, if any, with respect to the matters covered hereby. This Agreement may not be changed, modified or amended except by writing signed by each party hereto. Except as to subsidiaries and successors of any party to this Agreement, this Agreement shall not be assigned or otherwise transferred by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. This Agreement shall be binding upon and inure to the benefit of the successors, subsidiaries, affiliates and permitted assigns of the parties. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and the Bankruptcy Court shall retain jurisdiction over this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals as of the date first written above.

SELLER:
NOON MEDITERRANEAN, INC.

WITNESS/ATTEST:

_____  By: */s/ Stefan Boyd*  (SEAL)
Stefan Boyd
CEO

BUYER:
DAPHNE'S, INC.

WITNESS/ATTEST:

_____  By: *Michael Nakhleh*  (SEAL)
Name: Michael Nakhleh
Title: President